**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1760. VILLA SONOMA AT PERIMETER SUMMIT CONDOMINIUM ASSOCIATION, INC. v. COMMERCIAL INDUSTRIAL BUILDING OWNERS ALLIANCE, INC. et al.

MCFADDEN, Presiding Judge.

This is an appeal from the trial court's orders dismissing, for failure to state a claim, a complaint brought by Villa Sonoma at Perimeter Summit Condominium Association, Inc. a/k/a Villa Sonoma Condominium Association, Inc. ("Villa Sonoma") against various defendants associated with commercial property insurance that Villa Sonoma obtained to cover a condominium complex it operated. Villa Sonoma made a claim for insurance benefits after the complex sustained significant fire and water damage. It argues that it was harmed by a delay in the eventual payment of its claim and that the delay occurred or was exacerbated by the structure of the insurance program at issue, which Villa Sonoma argues had been misrepresented to

it when it obtained the insurance. In eight separate counts, Villa Sonoma asserted direct and derivative claims falling into two general categories: claims relating to an alleged violation of OCGA § 33-4-6 for bad faith handling of the insurance claim, and claims relating to alleged fraud or negligent misrepresentation regarding the insurance program. (Although Villa Sonoma's complaint could also be read to assert additional claims relating to the alleged illegality of the insurance program, Villa Sonoma expressly states in its appellate brief that it is not asserting such additional claims. )

As detailed below, we find no error in the trial court's dismissal of the counts related to statutory bad faith, because Villa Sonoma cannot introduce evidence within the framework of its complaint to show that it made a proper demand for payment of its insurance claim as required by OCGA § 33-4-6. So we affirm the trial court's judgment as to the bad-faith-based counts.

However, dismissal is premature as to the counts related to allegations of fraud and misrepresentation. While we agree with the defendants that Villa Sonoma's complaint did not make these allegations with sufficient particularity, the appropriate remedy is to require a more definite statement. So we reverse the trial court's judgment as to the fraud-based counts and misrepresentation-based counts, and we

2

remand the case with direction that the trial court treat the motions to dismiss those counts as motions for more definite statement.

1. *Applicable legal standards and overview of complaint.*

A trial court may dismiss a complaint under OCGA § 9-11-12 (b) (6) for failure to state a claim "where [the] complaint lacks any legal basis for recovery." *Auto-Owners Ins. Co. v. Tracy*, 344 Ga. App. 53, 54 (806 SE2d 653) (2017) (citation and punctuation omitted). This occurs if

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

*Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997) (citations omitted). For the purpose of this determination, documents attached to and incorporated into the pleadings are considered to be a part of them. *Montia v. First-Citizens Bank & Trust*

3

*Co.*, 341 Ga. App. 867, 868-869 (801 SE2d 907) (2017). This court reviews a trial court's ruling on a motion to dismiss de novo, viewing as true all well-pleaded material allegations in the complaint. *Auto-Owners Ins. Co.*, supra. However, "we are under no obligation to adopt a party's legal conclusions based on these facts." Id. (citation and punctuation omitted).

So viewed, the allegations in Villa Sonoma's second amended complaint (the subject of the motions to dismiss) stated that in 2013 Villa Sonoma entered into an agreement for property insurance on a condominium complex it operated. A document evidencing that agreement, titled "Evidence of Commercial Property Insurance," and a copy of an insurance policy were attached to and made a part of one of the defendants' answers. (In its complaint, Villa Sonoma describes these materials as the insurance agreement.) The Evidence of Commercial Property Insurance document identified Villa Sonoma as the "Insured," defendant Commercial Industrial Building Owners Alliance, Inc. d/b/a CIBA Insurance Services ("CIBA") as the "Producer" (a term defined by Black's Law Dictionary (10th ed. 2014) as an insurance agent or insurance broker), and "Basic Residential Property – A" as the "Program" (hereinafter, "the program"). In the space on that document reserved for the name and address of the insurance company, it referred to an attached appendix containing a

4

schedule of insurance companies participating in the program. That schedule listed defendant Great Lakes Reinsurance SE f/k/a Great Lakes Reinsurance (UK) PC ("Great Lakes") as the primary insurance company under the program and numerous other defendants (hereinafter, the "participating carrier defendants"[1]) as excess insurance companies under the program.

Villa Sonoma alleged in its complaint that the insurance program was illegal. It alleged that, under the program and pursuant to separate agreements between certain of the defendants, CIBA functioned as an unauthorized property insurer and "surreptitiously undertook indemnity and insurance obligations to . . . Villa Sonoma." It alleged that the nature of CIBA's role and indemnification and insurance responsibilities and the nature of the indemnification and insurance responsibilities of the participating carrier defendants were misrepresented to it when it decided to obtain the insurance.

On March 20, 2014, a fire damaged a portion of the roof of a building in the condominium complex, and the building also sustained extensive water damage. Villa

_____

[1] The complaint defines the "participating carrier defendants" as Great Lakes and 17 other insurance entities. Since this appeal was docketed, we have granted Villa Sonoma's motions to dismiss the appeal as to three of those other entities — Arch Specialty Insurance Company, Axis Surplus Insurance Company, and Torus Specialty Insurance Company.

Sonoma made a claim for this damage with defendant Claims Adjusting Group, Inc. ("CAG"), which Villa Sonoma alleged to be a subsidiary or affiliate of CIBA responsible for assessing and handling its claim. Villa Sonoma alleged that it was harmed when the defendants failed to pay that claim promptly.

Specifically, Villa Sonoma alleged that in the months following the March 20, 2014 fire, it received some payments on its claim but that consultants hired by CIBA or CAG to determine its loss produced flawed estimates as part of an effort by CIBA and CAG to intentionally undervalue and delay paying the claim. Consequently, on October 1, 2014, Villa Sonoma retained a public adjusting firm to assist in the adjustment process and produce an estimate of its loss.

On January 16, 2015, Villa Sonoma's legal counsel sent a letter to CIBA and CAG, in their capacities as agents for Great Lakes and certain other defendants it jointly describes as the "insurance defendants."[2] The January 16, 2015 letter demanded that Great Lakes pay it $4,510,752.24 to settle its insurance claim. A copy of this demand letter is attached to and incorporated into Great Lakes's answer. Over the course of the year following the January 16, 2015 demand, CIBA's and CAG's

---

[2] The complaint defined the "insurance defendants" as the "participating carrier defendants" and CIBA.

6

consultants continued to provide Villa Sonoma with estimates of its loss; Villa Sonoma's public adjuster continued to provide estimates; CIBA, CAG, and two other defendants (jointly described by Villa Sonoma as the "claims handling defendants"[3]) hired an additional consultant which inspected the property jointly with the public adjuster, reviewed the public adjuster's estimates of the loss, and provided its own estimates; and CAG and Great Lakes made additional payments to Villa Sonoma. The defendants assert that Villa Sonoma's insurance claim ultimately was paid in full, and Villa Sonoma does not appear to dispute this assertion.

On March 19, 2015, Villa Sonoma filed its initial complaint in this action, and on December 21, 2016, it filed the second amended complaint that is the subject of the motions to dismiss. The defendants moved in three groups to dismiss the second amended complaint for failure to state a claim under OCGA § 9-11-12 (b) (6). The trial court granted those motions with prejudice, and after Villa Sonoma voluntarily dismissed without prejudice another defendant not involved with this appeal, the trial court entered a final order dismissing all claims against all defendants. Villa Sonoma appeals.

---

[3] The other two defendants described by Villa Sonoma as "claims handling defendants" were Certain Underwriters at Lloyd's of London Subscribing to Policy No. 3187 ("Underwriters") and Indian Harbor Insurance Company ("Indian Harbor").

*2. Counts related to allegations of statutory bad faith under OCGA § 33-4-6.*

Villa Sonoma asserted counts against CIBA and Great Lakes for damages under OCGA § 33-4-6,[4] which provides that "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder [a specified penalty] in addition to the loss[.]" OCGA § 33-4-6 (a). The trial court dismissed these counts on the ground that Villa Sonoma did not make a proper demand to either Great Lakes or CIBA as required by that statute.[5]

Villa Sonoma also asserted a count against CAG for aiding and abetting the alleged bad faith of Great Lakes and CIBA under OCGA § 33-4-6. The trial court dismissed this count on the ground that the complaint failed to state the predicate bad-faith violation.

---

[4] Villa Sonoma asserted this count against all four "claims handling defendants" but later dismissed it without prejudice as to Underwriters and Indian Harbor.

[5] Alternatively, the trial court dismissed the statutory bad faith count against CIBA on the ground that CIBA was not an insurer as that term is defined in OCGA § 33-1-2 (4). Because we affirm the dismissal of the count on the "proper demand" ground, we do not reach the merits of this alternative ground.

We find no error in the trial court's dismissal of these counts. The requirements of OCGA § 33-4-6 are strictly construed, because that Code section imposes a penalty. *Balboa Life & Cas. v. Home Builders Finance*, 304 Ga. App. 478, 482 (3) (697 SE2d 240) (2010) (citation omitted). And one of those requirements is that the insured make a demand for payment under the policy more than 60 days before filing suit. See OCGA § 33-4-6 (a). See also *Stedman v. Cotton States Ins. Co.*, 254 Ga. App. 325, 328 (1) (562 SE2d 256) (2002) (demand for payment is prerequisite to filing bad faith action under OCGA § 33-4-6). Indeed, a "proper demand for payment is *essential* to recovery" on a claim for an insurer's bad faith under OCGA § 33-4-6. *BayRock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007) (citation omitted; emphasis supplied).

To be proper, "the demand must be made at a time when immediate payment is due. An insured cannot legally demand immediate payment if the insurer has additional time left under the terms of the insurance policy in which to investigate or adjust the loss." *BayRock Mtg. Corp.*, supra (citation and punctuation omitted). If the investigation or adjustment of the claim is ongoing, consistent with the policy terms, the insurer is not yet in a position to conclude that the insured had a right to the amount claimed in the demand. See *Balboa Life & Cas.*, 304 Ga. App. at 483 (3)

9

(insurer entitled to summary judgment on statutory bad faith claim where insured did not provide insurer with the information necessary for insurer to conclude insured had right to amount claimed until less than 60 days before suit was filed, and insured made no demand for payment of that amount after supporting information was provided).

The allegations of the complaint disclose with certainty that Villa Sonoma would not be entitled to relief under OCGA § 33-4-6 under any state of provable facts thereunder, because those allegations establish that the investigation into and adjustment of the claim was ongoing when Villa Sonoma demanded payment from Great Lakes on January 16, 2015. The complaint allegations described above indicate that the parties had not agreed on the extent of Villa Sonoma's loss and were still engaged in investigating and appraising it. Villa Sonoma does not allege that, under the terms of the policy, Great Lakes's time for investigating and adjusting the loss had expired, and from our review of the policy we find no express time period for investigation and adjustment. So Villa Sonoma could not possibly introduce evidence within the framework of the complaint sufficient to show that the period for investigation and adjustment had ended and immediate payment was due when Villa Sonoma made its January 16, 2015 demand. It follows that Villa Sonoma could not

possibly introduce evidence showing that it had made the proper demand required for relief from CIBA or Great Lakes under OCGA § 33-4-6. And because it failed to state a claim that CIBA or Great Lakes was liable to it under OCGA § 33-4-6, Villa Sonoma also failed to state a claim that CAG was derivatively liable for the alleged violation of OCGA § 33-4-6. The trial court properly dismissed these counts.

Given this conclusion, we need not address several of the parties' other arguments relating to the January 16, 2015 demand letter and the statutory bad faith count: whether to characterize the amount demanded in the letter as a request for actual cash value or replacement cost value, whether Villa Sonoma was required to demand a specific amount in its letter, and whether CIBA was an insurer for purposes of the bad faith count.

3. *Counts related to allegations of fraud and negligent misrepresentation.*

Villa Sonoma asserted counts for fraud and negligent misrepresentation against CIBA, alleging that CIBA or its agents intentionally or negligently made material misrepresentations and omissions regarding the nature and extent of its indemnification responsibilities under the program and that Villa Sonoma reasonably relied on these misrepresentations to its detriment. Villa Sonoma also asserted counts deriving from the fraud and negligent misrepresentation allegations: counts against the

11

participating carrier defendants for aiding and abetting and vicarious liability in connection with CIBA's fraud or negligent misrepresentation, and a count against the insurance defendants for civil conspiracy predicated on, among other things, the alleged misrepresentations and omissions regarding the program. In its appellate brief, Villa Sonoma also characterizes its count against the insurance defendants for acting in concert as a claim based on the alleged fraud and negligent misrepresentation, but this connection is not clear from the phrasing of that count in the complaint. Nevertheless, to the extent that count may be construed to derive from the fraud and negligent misrepresentation allegations, we also consider it in this division. See generally *Anderson*, 267 Ga. at 501 (2) (requiring a complaint to be construed most favorably to the plaintiff for the purpose of deciding a motion to dismiss for failure to state a claim).

The trial court dismissed the counts arising from allegations of fraud or negligent misrepresentation on the ground that Villa Sonoma failed to allege several of the required elements of those torts — misrepresentation, reasonable or justifiable reliance, and damages — with sufficient particularity. See *Futch v. Lowndes County*, 297 Ga. App. 308, 312 (4) (676 SE2d 892) (2009) (elements of negligent misrepresentation); *Nash v. Studdard*, 294 Ga. App. 845, 848 (1) (670 SE2d 508)

12

(2008) (elements of fraud). See also OCGA § 9-11-9 (b) (requiring circumstances of fraud to be pled with particularity). This was error, for the reasons set forth in *Roberts v. JP Morgan Chase Bank, N. A.*, 342 Ga. App. 73 (802 SE2d 880) (2017). We explained in that decision that

> [t]he tort of fraud requires a willful misrepresentation of a material fact, made to induce another to act, upon which such person acts or avoids acting to his injury. Fraud must be pled with particularity under OCGA § 9-11-9 (b). But in *Cochran v. McCollum*, [233 Ga. 104 (210 SE2d 13) (1974),] the Supreme Court of Georgia held with respect to an initial motion to dismiss . . . that a claim of fraud should not be dismissed unless it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief, and that the remedy at that stage of the pleading is not a motion to dismiss but a motion for more definite statement under OCGA § 9-11-12 (e). The only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed. Accordingly, we consider the two claims in conjunction with each other.

Id. at 78-79 (3) (citations and punctuation omitted).

As described above, Villa Sonoma alleged that CIBA, or its agents acting with information provided by CIBA, made material misrepresentations or omissions regarding the structure of the program and the nature and extent of the

13

indemnification and insurance responsibilities of CIBA and others under the program. It alleged that it entered into the insurance agreement in reasonable reliance on these misrepresentations or omissions. But as we held in *Roberts*,

> [i]t is too early in these proceedings for us to say beyond doubt that [Villa Sonoma] can prove no set of facts in support of the fraud and negligent misrepresentation claims which would entitle [it] to relief. But at the very least [Villa Sonoma] should designate the occasions on which affirmative misrepresentations [or omissions] were made and by whom and in what way they were acted upon. [Villa Sonoma] did not meet the requisite pleading standard, but the remedy is not dismissal of [its] claims. The trial court's dismissal of the fraud and negligent misrepresentation claims [against CIBA and its dismissal of the claims against other defendants deriving from the allegations of fraud and negligent misrepresentation are] reversed, and the case is remanded with direction to treat the motion[s] to dismiss as to those claims as . . . motion[s] for a more definite statement under OCGA § 9-11-12 (e).

*Roberts*, supra at 79 (3) (citations and punctuation omitted).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Rickman and Markle, JJ., concur.*

14