**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0336. HILL vs. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.

McMILLIAN, Judge.

Jennifer Hill filed this qui tam action to recover damages and civil penalties on behalf of the State of Georgia under the Georgia False Medicaid Claims Act, OCGA § 49-4-168, et seq. (the "GFMCA"), and for damages under the GFMCA and the Georgia Whistleblower Act, OCGA § 45-1-4 (the "Whistleblower Act"), for what she claims was retaliation against her. This appeal marks the second appearance of Hill's case before this Court,[1] and she now challenges the trial court's dismissal of the claims alleged in her second amended complaint against the College of Dental Medicine

---

[1] The trial court previously dismissed Hill's appeal based on her failure to timely file a transcript, and Hill appealed that order. We reversed that dismissal in *Hill v. Bd. of Regents of the Univ. System of Ga.*, 346 Ga. App. 830 (816 SE2d 296) (2018), and the appeal is now before us on the merits.

Faculty Practice ("Faculty Practice"), MCG Health System, Inc. ("System"), and MCG Health, Inc. ("MCGHI") (collectively "Defendants"). Although the trial court properly dismissed Hill's claims arising out of allegedly false claims that Defendants submitted to the Georgia Medicaid program, we find that the trial court erred in dismissing her retaliation claims against Faculty Practice.

In considering a motion to dismiss, courts must accept as true "all well-pled material allegations in the complaint and must resolve any doubts in favor of the plaintiff[.]" (Citation and punctuation omitted.) *Republic Title Co., LLC v. Andrews*, 347 Ga. App. 463, 464 (819 SE2d 889) (2018). Applying these principles, we turn to the complaint in this case,[2] which alleges that in May 2012, Hill accepted the position of Chair of Pediatric Dentistry and the faculty rank of Associate Professor of Pediatric Dentistry offered to her by the acting dean of the College of Dental Medicine (the "CDM"). As part of this position, Hill, along with other qualified faculty members, performed work at the CDM Dental Clinic (the "Clinic"). All faculty members who work at the Clinic are members of Faculty Practice, an unincorporated association.

---

[2] Hill filed two separate amendments to her original complaint. Hill's second amended complaint recites that it is intended to consolidate the original and first amended complaints, and it does not incorporate the allegations from the prior two complaints. Therefore, we rely only on the allegations in the second amended complaint in setting out the underlying facts of the case.

The revenue generated through this clinic was controlled by the Board of Regents of the State of Georgia (the "BOR") but distributed by Faculty Practice, and a portion of the revenue generated by each faculty member became part of his or her compensation pursuant to a revenue distribution plan. Under the terms of her contract, therefore, Hill received payment from both Faculty Practice and the BOR, and she alleges that she was an employee of both entities.[3]

MCGHI is a non-profit organization formed, in part, for the purpose of leasing and operating Georgia Health Sciences Medical Center clinics and hospitals. Although Faculty Practice is responsible for the billing at the Clinic, MCGHI and System (hereinafter collectively referred to as "MCG") managed and operated the CDM clinical facilities, providing administrative staff and support personnel who prepared the bills and submitted them on behalf of Faculty Practice. Under provider participation agreements with the State of Georgia, Faculty Practice and MCG were required to provide Medicaid Fee-For-Service to recipients and to provide services

---

[3] Hill also named the BOR as a defendant in this action, but it is not a party to this appeal. During the course of the litigation, Hill voluntarily dismissed all claims against the BOR under the GFMCA, and thus, at the time of this appeal, the only claims remaining in the case below were Hill's claims against the BOR under the Whistleblower Act as alleged in Count III of the Complant.

3

for children enrolled with the State's PeachCare for Kids Program ("PeachCare") under certain guidelines. MCG billed for these services under its provider number, as well as Faculty Practice's provider number, in accordance with provider agreements each entity signed (collectively, the "Provider Agreement") with the Centers for Medicare and Medicaid Services ("CMS").

Hill alleges that during the course of her employment, she discovered that Faculty Practice and MCG had violated provisions of the GFMCA by failing to conform to certain regulations regarding plans of care, informed consent, and billing, which in turn violated the Provider Agreement. On or around October 31, 2012, Hill began reporting the violations she observed to the acting dean of the CDM and others. Hill alleges that because of these reports, she was demoted, threatened, harassed, and/or discriminated against as to the terms and conditions of her employment.

Hill filed her initial qui tam complaint under seal on May 21, 2014, in accordance with OCGA § 49-4-168.2 (c) (2), and after the Georgia Attorney General declined to intervene in the matter, the case was unsealed. See OCGA § 49-4-168.2 (c) (4). Hill's original complaint alleged that the Defendants engaged in five different schemes that resulted in the presentation of false or fraudulent claims for payment to Medicaid and PeachCare in violation of the GFMCA. The Defendants moved to

4

dismiss these claims, and the trial court granted their motions. However, three days before the trial court entered its written dismissal order, Hill filed a second amended complaint (the "Complaint"), in which she reduced the number of schemes to four,[4] asserting that the

> Defendants failed to meet the conditions of participation, violated conditions of enrollment as a provider, and violated regulations governing patient records and billing, as required by Defendants' contract with [CMS] and/or the State of Georgia as it incorporates relevant statutory requirements, including:
>
> > (a)    Failing to obtain the necessary consent from Medicaid/PeachCare beneficiaries before billing for pediatric dental services;
> >
> > (b)    Failing to provide a full and complete treatment plan setting out all expected procedures and other treatments, (Schemes 1 and 2)[;]
> >
> > (c)    Billing, without proper authorization to do so, Medicaid/PeachCare beneficiaries for services that had been disallowed by CMS, (Scheme 3)[; and]

---

[4] Hill's second amended complaint recited that she was dropping "any and all allegations or claims against each Defendant related to . . . 'Scheme 4' involving 'upcoding.'" She also filed a motion to withdraw such claims, which the trial court granted.

    (d)    When Defendants were made aware of these various false claims, they did nothing to rectify overpayments and have thus retained overpayments in violation of the Fraud Enforcement Recovery Act of 2009 ("FERA"), 18 USC § 27, (Scheme 5).

In response, the Defendants renewed their motions to dismiss as to the second amended complaint, and the trial court entered a second order dismissing Hill's claims against the Defendants (the "Dismissal Order") on the ground that she had failed to state any claim for relief under the GFMCA.[5]

Hill argues on appeal that the trial court erred in (1) making findings of fact instead of searching for issues of fact in deciding the Defendants' motions to dismiss; (2) misconstruing federal law in ruling that she had not pleaded a prima facie case under the GFMCA with regard to Schemes 1 and 2; (3) concluding that balance billing of patients, alleged in Scheme 3, does not violate Medicaid payment regulations; (4) dismissing her "so-called Reverse False Claims" (Scheme 5) under the GFMCA; (5) dismissing her retaliation claims under the GFMCA on the ground that Defendants were not her employer(s); and (6) dismissing her complaint rather

---

[5] Both dismissal orders signed by the trial court were prepared by Defendants' counsel.

6

than requiring a motion for more definite statement. This Court reviews the trial court's ruling on a motion to dismiss de novo. *Andrews*, 347 Ga. App. at 464.

1. Hill's first enumeration of error, asserting that the trial court erred in making findings of fact in the Dismissal Order, essentially argues that the trial court failed to apply the proper standard in considering the motions to dismiss. It is well settled that "[a] trial court may dismiss a complaint under OCGA § 9-11-12 (b) (6) for failure to state a claim where the complaint lacks any legal basis for recovery." (Citation and punctuation omitted.) *Villa Sonoma at Perimeter Summit Condo. Assn., Inc. v. Commercial Indus. Bldg. Owners Alliance, Inc.*, __ Ga. App. __, __ (1) (824 SE2d 738) (2019). A complaint lacks any legal basis for recovery where

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied.

(Citation omitted.) Id. at __ (1). See also *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). In other words, in reviewing a motion to dismiss, a trial court

7

does not act as a trier of fact, but rather it determines whether a complaint sets up a sufficient framework, upon which facts, if proved, could establish a ground for relief. See *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 697 (577 SE2d 864) (2003). Based on our review of the dismissal order, we find no error in the trial court's enunciation or application of the standard for considering a motion to dismiss.

2. *Count I – False Claims under the GFMCA*. Turning to the merits of the motion to dismiss, we note at the outset that the Complaint alleges Hill's claims under three separate counts: Count I alleging false claims under the GFMCA in connection with Schemes 1, 2, 3, and 5; Count II alleging retaliation claims under the GFMCA; and Count III, alleging claims under the Whistleblower Act.[6] Hill only appeals the dismissal of her claims against Defendants under Counts I and II of the Complaint, and we address each count in turn.

(a) *Schemes 1 and 2: Implied False Certification Claims*. Hill first asserts that the trial court misconstrued applicable federal law in concluding that she failed to state a claim for relief under the GFMCA with regard to Schemes 1 and 2.

---

[6] We note that the Complaint recites that Hill was dismissing her Whistleblower Act claims against Faculty Practice and MCGHI, and she filed a motion to dismiss such claims.

The GFMCA, enacted in 2007, imposes civil liability for Medicaid fraud. OCGA § 49-4-168.1. As pertinent to Schemes 1 and 2, a person violates that act when he or she "[k]nowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval[.]" OCGA § 49-4-168.1 (a) (1). Additionally, the GFMCA is violated when a person "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim[.]" OCGA § 49-4-168.1 (a) (2). For purposes of the act, a "claim" is defined to include "any request or demand, whether under a contract or otherwise, for money or property . . . made to the Georgia Medicaid program[.]" OCGA § 49-4-168 (1).

Although Georgia courts have had very little occasion to address the provisions of the GFMCA, this Court has noted that "[t]he statutory language in the GFMCA . . . mirrors the language in the federal False Claims Act, 31 USC § 3730 (h) [the "Federal Act"], and courts generally look to federal case law to decide issues under the GFMCA." (Citation omitted.) *Murray v. Commmunity Health Systems Professional Corp.*, 345 Ga. App. 279, 283 (1) (811 SE2d 531) (2018). See also *Reddick v. Jones*, 2015 U.S. Dist. LEXIS 40877 at *16 (III) (A) (3) (NDGa. 2015) (applying Federal Act case law to GFMCA claims). Relying on the applicable federal

9

authority, we now turn to the allegations of the Complaint regarding Schemes 1 and 2.

The Complaint alleges that the Defendants functioned "as providers or as the agents of providers of pediatric dental services to Medicaid and/or PeachCare beneficiaries," and in that capacity, they operated under "the rules mandating provider compliance under Title XIX of the Medicaid Act."[7] The Complaint further alleges that the Medicaid Act requires the State of Georgia to implement an Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") program, which includes regular dental services and which "cannot function without viable and correctly recorded plans of care for plan beneficiaries – allowing for continuity of care[, without which], the EPSDT program cannot achieve its stated purposes." The Complaint also alleges that 42 CFR § 482.24 (c) (4) (v) requires that Defendants maintain certain documentation for Medicaid patients including informed consent and other records showing the medical treatment provided. The Defendants billed and received compensation from Medicaid and PeachCare for dental services provided

---

[7] Although the Complaint does not give a legal citation for the Medicaid Act, that term is the common name for Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. See *Martes v. Chief Executive Officer of South Broward Hosp. Dist.*, 683 F3d 1323, 1324 (I) (11th Cir. 2012).

to their beneficiaries, and the Complaint alleges that by billing for such services, Defendants certified to Medicaid and PeachCare that the dental care had been rendered in compliance with the regulatory requirements of those programs, when in fact they had failed to meet the requirements for maintaining evidence of proper informed consent and plans of care.

These allegations set forth claims under the theory of "implied false certification," and according to that theory,

> when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent" under [the Federal Act].

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, __ U.S. __ (136 SCt 1989, 195 LE2d 348) (2016) ("*Escobar*"). The United States Supreme Court has recognized the potential viability of such claims, holding that

> the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose

11

noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

Id. at 2001 (II).

The trial court found that Hill's Complaint failed to plead sufficient facts related to the required elements of falsity, presentment of claims, and materiality[8] and thus had failed to state a claim under the GFMCA for which relief could be granted with regard to Schemes 1 and 2.

(i) *Scheme 1: Informed Consent* – With regard to Scheme 1, Hill cites 42 CFR § 482.24 (c) (4) (v) to support her claim that Defendants were required to maintain written informed consent forms and that the submission of claims without those forms in the file are "false" under the GFMCA. That regulation sets out the conditions for participation by "hospitals" in the Medicaid program and is part of a set of regulations that "serve as the basis of survey activities for the purpose of determining whether a

---

[8] The Supreme Court emphasized that "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [Federal Act,]" *Escobar*, 136 S.Ct. at 1996, which is not "an all-purpose antifraud statute[] or a vehicle for punishing garden-variety breaches of contract or regulatory violations." (Citation and punctuation omitted) Id. at 2004 (III) (B).

hospital qualifies for a provider agreement under Medicare and Medicaid." 42 CFR § 482.1 (b).

Even if each Defendant could be deemed to qualify as a "hospital" within the meaning of Section 482.24 (c) (4) (v), that regulation does not mandate that hospitals maintain evidence of informed consent for every procedure on which they assert a claim. Rather, the regulation provides that "[a]ll [medical] records must document the following, as appropriate: . . . [p]roperly executed informed consent forms for procedures and treatments specified by the medical staff, or by Federal or State law if applicable, to require *written* patient consent." 42 CFR § 482.24 (c) (4) (v) (emphasis added). This regulation is the only requirement for informed consent cited in the Complaint, and it merely requires that hospitals document "as appropriate" properly executed informed consent forms and follow the applicable law. Therefore, the Complaint does not cite any requirement under federal law, state law, or medical staff specifications that actually requires written informed consent for the claims submitted by the Defendants.[9]

---

[9] Although the Complaint cites CMS "guidelines" for items to be included on informed consent forms, the cited guidelines do not themselves require written informed consent, and the Complaint does not assert that any other guidelines require such documentation.

We are aware that Georgia requires informed consent for some, but not all, dental procedures, as set out in OCGA § 31-9-6.1 (a),[10] but the Complaint does not allege that Defendants submitted claims for any such procedures. See *Roberts v. Connell*, 312 Ga. App. 515, 518 (2) (718 SE2d 862) (2011) (applying OCGA § 31-9-6.1 to dental procedures and holding that dentist had no statutory duty to obtain patient's informed consent to crown restoration procedure). In any event, OCGA § 31-9-6.1 (a), does not require *written* informed consent for any dental procedure.[11] Therefore, no violation of 42 CFR § 482.24 (c) (4) (v) would arise under state law.

Accordingly, because the Complaint failed to identify any requirement for written informed consent applicable to the claims in this case, it does not allege a violation of any condition for payment of Medicaid claims on that ground.

---

[10] OCGA § 31-9-6.1 (a) requires informed consent from "any person who undergoes any surgical procedure under general anesthesia, spinal anesthesia, or major regional anesthesia or any person who undergoes an amniocentesis diagnostic procedure or a diagnostic procedure which involves the intravenous or intraductal injection of a contrast material[.]"

[11] Rather, written evidence of consent merely determines whether a presumption arises as to the validity of the consent. OCGA § 31-9-6.1 provides that if consent to any of the procedures identified in the statute "is duly evidenced in writing, and is signed by the patient or other person or persons authorized to consent[,]" a rebuttable presumption arises that such consent is valid. OCGA § 31-9-6.1 (b) (2). If such consent is not in writing, no presumption as to the validity of the consent arises. OCGA § 31-9-6.1 (b) (1).

(ii) *Scheme 2: Plans of Care* – With regard to Scheme 2, the Complaint alleges that Medicaid required Georgia to implement an EPSDT program, which it alleges "cannot function" without plans of care and that claims submitted without plans of care in the file were "false" under the GFMCA. Although the Complaint alleges that 42 CFR § 482.24 (c) (4) (v) "also required that substantial records be kept on the diagnosis and treatment for each patient, as well as proper documentation of any major procedure used with each patient[,] " that subsection relates only to written informed consent, and the Complaint fails to identify any other portion of that regulation that requires a "plan of care."[12] Accordingly, we agree with the trial court that the Complaint fails to allege any requirement that was violated by the Defendants with regard to plans of care.

Because the Complaint does not identify any violations of statutory, regulatory, or contractual requirements with regard to written informed consent forms or plans of care, the Complaint fails to state a claim for implied false certification under Schemes 1 or 2.[13]

---

[12] In fact, neither the word "plan" nor the phrase "plan of care" appears anywhere in 42 CFR § 482.24.

[13] Because we have found that the claims under Schemes 1 and 2 were subject to dismissal for failing to allege the essential element of falsity, we need not address

15

(b) *Scheme 3: Balance Billing*. Hill next asserts that the trial court erred in concluding that balance billing[14] of patients does not violate Medicaid payment regulations.[15] However, the trial court made no such ruling. Rather, in dismissing Hill's claims with regard to balance billing under Scheme 3, the trial court found that the Complaint failed to cite any statutory, regulatory, or contractual requirement regarding balanced billing, and that, in any event, Hill admitted that Scheme 3 relates to the billing of patients, not the billing of the Georgia Medicaid program as required to state a claim under the GFMCA.

---

the trial court's rulings on the issues of materiality and presentment with regard to the implied certification claims.

[14]"Balance billing occurs when a provider accepts payment from Medicaid and then seeks to recover from the patient the balance between that payment and its customary fee." (Citation and punctuation omitted.) *Robinett v. Shelby County Healthcare Corp.*, 895 F3d 582, 587 (II) (A) (8th Cir. 2018).

[15] We note that federal courts have held that "[f]ederal Medicaid law . . . prohibits medical providers from . . . balance billing." (Citation omitted.) *Robinett*, 895 F3d at 587 (II) (A). See also *Miller v. Wladyslaw Estate*, 547 F3d 273, 282-83 (2) (5th Cir. 2008); *Spectrum Health v. Anna Marie Bowling Irrevocable Trust*, 410 F3d 304, 314 (II) (C) (6th Cir. 2005); 42 USC § 1396a (a) (25) (C).

Hill correctly points out that the Complaint does, in fact, cite two federal regulations in connection with her claim of improper balance billing,[16] but the Complaint's balance billing claim alleges that Defendants improperly billed *patients* for dental procedures that Medicaid/PeachCare had disallowed or failed to pay, which the Complaint alleges violated the Provider Agreement.[17] Nothing in the GFMCA provides civil liability for claims submitted to anyone other than the Georgia Medicaid program.[18] See OCGA §§ 49-4-168 (a); 49-4-168.1 (a). Accordingly, we

---

[16] The Complaint's allegations regarding balance billing refer to 42 CFR § 401.305 (a) (1), which requires that "a person that has received an overpayment must report and return the overpayment[,]" and 42 CFR § 447.15, which provides that "[a] State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."

[17] We note that the Complaint cites to two provisions of the Provider Agreement addressing billing requirements. However, neither of those contractual provisions addresses the practice of balance billing.

[18] Unlike Schemes 1 and 2, the Complaint does not assert an implied false certification claim in connection with the allegations of improper balance billing; rather, she alleges only that the Defendants engaged in improper balance billing to Medicaid recipients and seeks to recover on that basis.

17

agree with the trial court that the Complaint fails to state a claim under the GFMCA with regard to balance billing, as alleged in Scheme 3.[19]

(c) *Scheme 5 – Reverse False Claims*. Hill further contends that the trial court erred in dismissing her "so-called Reverse False Claims" under Scheme 5. Under that scheme, the Complaint alleges that Defendants are liable under the GFMCA because "[w]hen Defendants were made aware of these various false claims, they did nothing to rectify overpayments and have thus retained overpayments in violation of the Fraud Enforcement Recovery Act of 2009 ("FERA"), 18 USC § 27[.]" The trial court found that Hill failed to allege any clear and definite obligation to repay any amounts and that because Scheme 5 hinges on the successful pleading under Schemes 1, 2, and 3 to establish such an obligation, her failure to state any claim under those schemes meant she also could not state a claim under Scheme 5.

The GFCA expressly provides for civil liability for reverse-false-claims under OCGA § 49-4-168.1 (a) (7), which states that any person who

---

[19] We note that the Eleventh Circuit has held under federal law that not even Medicaid recipients who are billed for services disapproved by Medicaid have a right to recover for a violation of the prohibition against balance billing. See *Martes v. Chief Exec. Officer of South Broward Hosp. Dist.*, 683 F3d 1323, 1330 (IV) (11th Cir. 2012).

[k]nowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit property or money to the Georgia Medicaid program, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit property or money to the Georgia Medicaid program, shall be liable to the State of Georgia for a civil penalty consistent with the civil penalties provision of the [Federal Act.]

The GFMCA defines the term "obligation" to expressly include "an established duty . . . arising . . . from retention of any overpayment." OCGA § 49-4-168 (4). The text of OCGA § 49-4-168.1 (a) (7) closely tracks the text of 31 USC § 3729 (a) (1) (G) under the Federal Act,[20] and a claim under that provision "is known as [a] 'reverse false claim' . . . because liability results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim." *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F3d 1217, 1222 (11th Cir. 2012) (decided under prior version of statute). Therefore, to sustain her reverse false claim

---

[20] Under 31 USC § 3729 (a) (1) (G), liability may be imposed on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]"

19

under the GFMCA, Hill must first show that the Defendants owed money to the Georgia Medicaid program. See id. at 1223.

The Complaint alleges under Scheme 5 that the Defendants failed to reimburse the Georgia Medicaid program for overpayments the program made to them based on the allegedly false claims they submitted under Schemes 1, 2, and 3. However, we have found that the Complaint fails to allege that Defendants presented any false claims to the Georgia Medicaid program under Schemes 1 or 2 and that no claims were submitted to the Georgia Medicaid program based on Scheme 3's allegations of balance billing. Because the Complaint fails to allege that Defendants submitted any claims to the Georgia Medicaid program that resulted in overpayment, it cannot present any set of facts to show that Defendants had any payment obligation to the program. Therefore, the Complaint fails to state any cause of action for reverse false claims under Scheme 5.

Accordingly, we find that the trial court properly found that Hill failed to allege any claim for relief under Count I of the Complaint.

3. *Count II – Retaliation Under the GFMCA*. Hill also contends that the trial court erred in dismissing her retaliation claims under the GFMCA alleged in Count II of the complaint on the ground that Defendants were not her employer(s).

20

Specifically, the trial court found that Hill had never alleged that MCGHI or System were her employers, and that allegations in prior complaints contained judicial admissions that precluded her from alleging that Faculty Practice was her employer. We agree that the trial court properly dismissed Hill's retaliation claims against MCGHI and System because Hill has never alleged that either of those entities was her employer. However, we find that the trial court erred in dismissing the retaliation claims against Faculty Practice based on a finding that Hill had made a binding admission in judicio prohibiting such a claim.

In the Complaint, Hill alleges for the first time that Faculty Practice was her employer along with the BOR. This allegation directly contradicts an allegation Hill made in her first amended complaint, which stated that Faculty Practice "does *not* employ faculty and has no right to retain the fees it collects – the fees are collected 'for the benefit of MCG, and they belong to the employer of [Faculty Practice's] members, the Board of Regents.'" (Emphasis supplied.) Under that allegation, therefore, only the BOR, and not Faculty Practice, would be Hill's employer because she is both a member of the faculty and a member of Faculty Practice.

It is true that under OCGA § 24-8-821, "either party may avail himself or herself of allegations or admissions made in the pleadings of the other," and OCGA

21

§ 24-8-801 (d) (2) further defines what is an admission of a party opponent.[21] "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F2d 224, 226 (I) (9th Cir. 1988). See also *Amgen Inc. v. Connecticut Retirement. Plans & Trust Funds*, 568 U. S. 455, 470 (II) (B) n. 6 (133 SCt 1184, 185 LE2d 308) (2013) (quoting *Lacelaw* with approval); *Cooper v. Meridian Yachts, Ltd.*, 575 F3d 1151, 1177 (B) (2) (11th Cir. 2009). Here, Hill amended her first amended complaint by filing a second amended Complaint without incorporating any allegations from her prior complaints. After that amendment, the admission no longer had the binding effect of an admission in judicio. *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 502 (1) (748 SE2d 407) (2013). See also *Wahnschaff v. Erdman*, 232 Ga. App. 77, 79 (1) (502 SE2d 246) (1998); *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1237-38 (I) (5th Cir.1979) ("As a general rule an amended complaint supercedes and replaces the original complaint, unless the

---

[21] Although OCGA § 24-8-821 is simply a restatement of former OCGA § 24-3-30 and has no specific federal counterpart, the legislature has adopted OCGA § 24-8-801 (d) (2), which covers the same subject matter. Because OCGA § 24-8-801 (d) closely tracks its federal counterpart, we apply federal precedent in interpreting both that provision and OCGA § 24-8-821. See *State v. Almanza*, 304 Ga. 553, 558 (2) (820 SE2d 1) (2018); Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 621 (6th ed. 2018).

22

amendment specifically refers to or adopts the earlier pleading."), vacated on other grounds, 444 U.S. 959 (1979) (citations omitted).[22] Therefore, factual allegations in superceded pleadings cease to be binding judicial admissions, but nevertheless they remain admissible evidence that can be weighed like any other admission against interest. See, e.g., *188 LLC v. Trinity Indus., Inc.*, 300 F3d 730, 736 (II) (B) (7th Cir. 2002); *First Bank of Marietta v. Hogge*, 161 F3d 506, 510 (II) (A) (8th Cir. 1998); *United States v. McKeon*, 738 F2d 26, 31 (1) (2d Cir. 1984); *Continental Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (I) (5th Cir. 1971). Accordingly, when Hill filed the Complaint, the earlier admission was no longer a binding admission in judicio, and the trial court erred in dismissing the claims against Faculty Practice on that basis.

Under our de novo review of the motions to dismiss, we now turn to the allegations of the Complaint regarding retaliation. We note as an initial matter that a retaliation claim does not sound in fraud. See *U.S. ex rel. Sanchez v. Lymphatx, Inc.*,

---

[22] OCGA § 9-11-15 addressing amendments is modeled after Rule 15 of the Federal Rules of Civil Procedure. Although there are some differences between the state and federal provisions, "those differences are not material to the question presented here[, and w]e may, therefore, look for guidance in decisions of the federal courts interpreting and applying Rule[] 15. . . ." *Community & Southern Bank v. Lovell*, 302 Ga. 375, 377 (2) n.6 (807 SE2d 444) (2017).

596 F3d 1300, 1304 (11th Cir. 2010) (retaliation claims under Federal Act do not implicate fraud); *Reddick*, 2015 U.S. Dist. LEXIS 40877 at *16 (III) (A) (3) ("[T]he language of the GFMCA's retaliation provision does not contain a fraud element, and thus, Rule 9 (b)' s heightened pleading requirements do not apply to the GFMCA retaliation causes of action."). Therefore, our finding that Hill failed to plead false claims under the GFMCA is not determinative of her retaliation claim. See *Sanchez*, 596 F.3d at 1303-04 (II) (affirming dismissal of false claim allegations under Federal Act, but reversing dismissal of retaliation claims).

Rather, under the GFMCA,

[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make such employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by such employee, contractor, agent or associated others in furtherance of a civil action under this Code section or other efforts to stop one or more violations of this article.

OCGA § 49-4-168.4 (a). This language mirrors the retaliation provision of the Federal Act, 31 USC § 3730 (h) (1), and

24

> [t]o establish a prima facie case of retaliation [under that act], a plaintiff must prove that (1) the employer is covered by the act at issue, (2) the employee engaged in protected activity, (3) the employee suffered adverse action, and (4) there is an inference of causation between the protected activity and the adverse action.

(Citation omitted.) *Murray*, 345 Ga. App. at 283 (1).

The Complaint alleges that after Hill discovered alleged violations of Medicaid requirements, she notified others of these violations and took additional steps to remedy them. It also alleges that Hill told a number of people about the alleged violations, warning that "[b]reaches of this nature can have serious legal consequences." At this stage of the litigation, we cannot say that she could not establish that her actions constituted protected activity, and although she does not allege that any of the people she informed about these issues were affiliated with Faculty Practice, we cannot say that she could not establish such a fact.

Hill further alleges that because of her actions in this regard, Faculty Practice "demoted, threatened, harassed and/or discriminated against [her] as to the terms and conditions of her employment. Although that allegation merely tracks the language of the GFMCA and does not allege any specific actions by Faculty Practice, under Georgia's Civil Practice Act,

25

> [i]t is well established that a plaintiff is not required to plead in the complaint facts sufficient to set out each element of a cause of action so long as it puts the opposing party on reasonable notice of the issues that must be defended against. And, in light of the minimal requirements of notice pleading, broad and conclusory allegations are not fatal to a plaintiff's claim at the motion-to-dismiss stage.

(Citations and punctuation omitted.) *Marshall v. McIntosh County*, 327 Ga. App. 416, 423 (759 SE2d 269) (2014). Accordingly, we find that the trial court erred in dismissing Hill's GFMCA claim of retaliation against Faculty Practice under Count II of the Complaint.

4. *Propriety of Dismissal* – Hill contends that even if the trial court properly found that her Complaint failed to state a claim for relief any of her claims, the court erred in dismissing them, rather than directing her to amend them. See *Osprey Cove Real Estate, LLC v. Towerview Constr., LLC*, 343 Ga. App. 436, 441 (3) (808 SE2d 425) (2017). Georgia law allows such a remedy for fraud claims that must be pleaded with particularity under OCGA § 9-11-9 (b).

> In *Cochran v. McCollum*, [233 Ga. 104 (210 SE2d 13) (1974)], the Supreme Court of Georgia held with respect to an initial motion to dismiss, or motion to strike, that a claim of fraud should not be dismissed unless it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief, and

26

that the remedy at that stage of the pleading is not a motion to dismiss but a motion for more definite statement under OCGA § 9-11-12 (e).

(Citations and punctuation omitted.) *Roberts v. JP Morgan Chase Bank, N. A.*, 342 Ga. App. 73, 78 (5) (802 SE2d 880) (2017).

However, we find that authority inapposite to this case.[23] Although Hill's Count I claims sound in fraud, they are defined, not by common law, but by the provisions of the GFMCA, which establishes civil liability for certain, defined claims. We have found that Hill's claims were subject to dismissal, not because she did not plead her allegations of fraud with particularity, but because she has not shown that any cause of action exists under the GFMCA for her claims despite having had three chances to plead them. Accordingly, because Hill would not be entitled to relief under any state of provable facts asserted in support of her alleged schemes, and she could not possibly introduce evidence within the framework of the Complaint sufficient to entitle her to relief, the trial court properly dismissed her claims based on those schemes. See *Majeed v. Randall*, 279 Ga. App. 679, 681 (3) (632 SE2d 413) (2006) (upholding dismissal of fraud claims because plaintiff not only failed to plead fraud

---

[23] Moreover, we note that the order before us is not on an initial motion to dismiss, as addressed by our Supreme Court in *Cochran*, but rather on a renewed motion to dismiss the third version of Hill's claims.

with specificity, but because no civil cause of action exists for damages for perjury committed in an earlier lawsuit as the claims alleged).

Accordingly, we affirm the trial court's dismissal of Count I of the Complaint; we affirm the dismissal of the retaliation claims against MCGHI and System under Count II; but we reverse the dismissal of Count II it relates to Faculty Practice.

*Judgment affirmed in part and reversed in part. McFadden, P. J., and Goss, J., concur.*