**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 8, 2023**

# In the Court of Appeals of Georgia

A22A1659. LIPMAN et al. v. STATE OF GEORGIA.

BROWN, Judge.

In this action under the Georgia False Medicaid Claims Act ("GFMCA"), OCGA §§ 49-4-168 to 49-4-168.6, the defendants appeal from the trial court's denial of their motion to dismiss.[1] Because we conclude that a claim that includes items or services resulting from a violation of the federal Anti-Kickback Statute ("AKS"), 42 USC § 1320a-7b, constitutes a false or fraudulent claim for purposes of the GFMCA, we affirm.

"In considering a motion to dismiss, courts must accept as true all well-pled material allegations in the complaint and must resolve any doubts in favor of the

---

[1] This Court granted the defendants' application for interlocutory review of the trial court's order.

plaintiff." (Citation and punctuation omitted.) *Hill v. Bd. of Regents of the Univ. System of Ga.*, 351 Ga. App. 455 (829 SE2d 193) (2019). "This Court reviews the trial court's ruling on a motion to dismiss de novo." Id. at 458. Statutory construction is a legal issue that this Court also reviews de novo. *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 461 (2) (868 SE2d 827) (2022).

The Medicaid program is a joint state-federal program in which healthcare providers serve poor or disabled patients and submit claims for government reimbursement. See 42 USC § 1396 et seq.; *Universal Health Svcs. v. United States ex rel. Escobar*, 579 U. S. 176, 183 (I) (B) (136 SCt 1989, 195 LE2d 348) (2016). Each state is required to implement a plan for federal Medicaid funds, and to administer and supervise its Medicaid program, which Georgia does through the Department of Community Health. See 42 USC § 1396a; OCGA § 49-4-142. Claims submitted to the Georgia Medicaid program are paid with both state and federal funds. See 42 USC § 1396 et seq.; OCGA § 49-4-142 et seq.

The State of Georgia filed the instant action in October 2021 against Dr. John C. Lipman and Atlanta Interventional Institute, P.C. ("Defendants"). The State alleged the following in its complaint. Dr. Lipman is a radiologist and the CEO and medical director of Atlanta Interventional Institute. From July 2010 through

December 2016, Defendants received remuneration from Merit Medical Systems, Inc. ("Merit"), in return for purchasing and using Merit's products in uterine fibroid embolization procedures. Due to this remuneration, Defendants' submission of claims to the Georgia Medicaid program for these products and procedures was tainted by illegal kickbacks, in violation of the AKS, specifically 42 USC § 1320a-7b (b) (1) (B). Because this conduct violated the AKS, Defendants had presented false or fraudulent claims to Georgia Medicaid, in violation of the GFMCA, specifically OCGA § 49-4-168.1 (a) (1). Defendants' receipt of illegal kickbacks from Merit resulted in over $540,000 in damages to Georgia Medicaid in payments for false or fraudulent claims.

Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, pursuant to OCGA § 9-11-12 (b) (6). Defendants argued that violations of the AKS cannot serve as a basis for liability under the GFMCA, because there is nothing in any relevant statute that expressly provides that violations of the AKS render a claim false or fraudulent for purposes of the GFMCA. The trial court denied the motion, stating that a violation of the AKS renders a related claim false for purposes of the GFMCA.

On appeal, Defendants again argue that the plain meaning of the relevant statutes shows that a violation of the AKS, standing alone, cannot be the basis of proving a false or fraudulent claim under the GFMCA. We disagree, because the definition of a false or fraudulent claim under the GFMCA mirrors the definition of a false or fraudulent claim under the federal False Claims Act ("FCA"), and the FCA definition includes a claim that involves items or services resulting from a violation of the AKS.

The FCA provides for civil liability to the federal government for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 USC § 3729 (a) (1) (A). Beginning January 1, 2007, 42 USC § 1396h (a) has allowed states with certain laws targeting false or fraudulent Medicaid claims to receive a greater share of recoveries in state actions brought under such state laws. Pub. L. No. 109-171, Title VI, § 6031 (a), 120 Stat. 72 (Feb. 8, 2006). Among other requirements, in order for a state to receive a greater share of recoveries, the Inspector General of the Department of Health and Human Services, in consultation with the Attorney General, must determine that the state law "establishes liability to the State for false or fraudulent claims described in section 3729 of title 31 with respect to any" Medicaid expenditure. 42 USC § 1396h (b) (1). Thus, states

4

are incentivized to have laws creating liability to them for false or fraudulent Medicaid claims as such claims are described in 31 USC § 3729.

The GFMCA, enacted by Georgia's legislature in May 2007, provides for civil liability to the State of Georgia for false or fraudulent Medicaid claims. See Ga. L. 2007, Act 220; *Hill*, 351 Ga. App. at 459 (2) (a).[2] Specifically, OCGA § 49-4-168.1 (a) (1) provides that any person who

> [k]nowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval . . . shall be liable to the State of Georgia for a civil penalty consistent with the civil penalties provision of the federal False Claims Act, 31 U.S.C. 3729 (a)

---

[2] In enacting the GFMCA, the legislature stated that

the submission of false or fraudulent claims to the Georgia Medicaid program can and does cause the state treasury to incur serious financial losses which results in direct harm to the taxpayers of this state. [The GFMCA] is intended to provide a partial remedy for this problem by providing specific procedures whereby this state, and private citizens acting for and on behalf of this state, may bring civil actions against persons and entities who have obtained state funds through the submission of false or fraudulent claims to state agencies.

Ga. L. 2007, Act 220, § 2.

5

. . . plus three times the amount of damages which the Georgia Medicaid program sustains because of the act of such person.

While some of the terms used within the GFMCA are defined at OCGA § 49-4-168, the GFMCA does not delineate what renders a claim "false or fraudulent," and "Georgia courts have had very little occasion to address the provisions of the GFMCA." *Hill*, 351 Ga. App. at 459 (2) (a). However, "the statutory language in the GFMCA mirrors the language in the federal [FCA], and courts generally look to federal case law to decide issues under the GFMCA." (Citations and punctuation omitted.) Id.; see also *Jordan v. State*, 336 Ga. App. 345, 350 (1) (785 SE2d 27) (2016) (physical precedent only) ("We have found no Georgia appellate cases addressing claims made under the GFMCA, although the body of federal law interpreting the almost-identical federal [FCA] is extensive.").

The AKS provides for criminal liability for any person who

knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind —

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

6

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program[.]

42 USC § 1320a-7b (b) (1). The AKS is designed to prevent Medicaid fraud and "to protect patients from doctors whose medical judgments might be clouded by improper financial considerations." *United States v. Patel*, 778 F3d 607, 612 (II) (A) (7th Cir. 2015).

Significantly, on March 23, 2010, Congress amended the AKS by enacting the Patient Protection and Affordable Care Act, which states that "a claim that includes items or services resulting from a violation of this section [i.e., 42 USC § 1320a-7b] constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of title 31." See 42 USC § 1320a-7b (g); Pub. L. No. 111-148, Title VI, § 6402 (f) (1), 124 Stat. 468 (Mar. 23, 2010). Subchapter III of chapter 37 of title 31 includes 31 USC § 3729 and its creation of civil liability for a "false or fraudulent claim." Thus, following the March 2010 amendment to the AKS, it is clear that "an AKS violation that results in a federal health care payment is a per se false claim under the FCA." (Citation and punctuation omitted.) *Guilfoile v. Shields*, 913 F3d 178, 190 (III) (A) (1st Cir. 2019). However, even before the amendment "the overwhelming weight of

authority" on the issue was that claims submitted in violation of the AKS were "false" under the FCA. *United States ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 43 FSupp.3d 332, 363-364 (V) (A) (S. D. N. Y. Sept. 3, 2014); see also *Guilfoile*, 913 F3d at 191 (III) (A) n.12 ("The legislative history suggests that the 2010 amendment was intended to codify the link between AKS violations and false claims within the meaning of the FCA.").

Against this backdrop, we conclude that a claim that includes items or services resulting from a violation of the AKS constitutes a false or fraudulent claim for purposes of the GFMCA. The definition of a "false or fraudulent claim" under OCGA § 49-4-168.1 (a) (1) should be construed consistently with the definition of a "false or fraudulent claim" under the FCA, specifically 31 USC § 3729 (a) (1) (A). This consistent construction is dictated by the essentially identical wording of the two statutes, see *Hill*, 351 Ga. App. at 459 (2) (a), and further supported by the incentive of the Georgia legislature, in enacting the GFMCA, to establish liability to the State for false or fraudulent claims as such claims are described in the FCA. See 42 USC § 1396h.[3] Indeed, "all statutes are presumed to be enacted by the legislature with full

[3] According to the State, the GFMCA meets the requirements for the State — including the requirement that the Inspector General of the Department of Health and Human Services determine that the GFMCA establishes liability to the State for false

8

knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law." (Citation and punctuation omitted.) *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (a) (797 SE2d 814) (2017). The definition of a "false or fraudulent claim" under the FCA includes a claim that involves items or services resulting from a violation of the AKS. 42 USC § 1320a-7b (g); *Guilfoile*, 913 F3d at 190 (III) (A). Thus, the definition of a "false or fraudulent claim" under the GFMCA likewise includes a claim that involves items or services resulting from a violation of the AKS.[4]

In conclusion, a claim that includes items or services resulting from a violation of the AKS constitutes a false or fraudulent claim under the GFMCA. Accordingly, the trial court did not err in denying Defendants' motion to dismiss, and we affirm.

*Judgment affirmed. Barnes, P. J., and Hodges, J., concur.*

---

or fraudulent claims as such claims are described in 31 USC § 3729, see 42 USC § 1396h (b) (1) — to receive an increased share of the civil penalties authorized under 42 USC § 1396h.

[4] We note that at least one federal district court has concluded that a violation of the AKS is per se a violation of the GFMCA. *United States ex rel. Bawduniak v. Biogen Idec Inc.*, 2022 WL 2438971, at *3 (I) (B) (D. Mass. July 5, 2022).