# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1336

_____

Lacey Robinett, Individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Shelby County Healthcare Corporation, doing business as Regional One Health, doing business as Regional Medical Center; Avectus Healthcare Solutions LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: January 11, 2018
Filed: July 13, 2018

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

SMITH, Chief Judge.

Lacey Robinett appeals the district court's[1] grant of judgment on the pleadings to Shelby County Healthcare Corporation ("the Med") and Avectus Healthcare

---

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

Solutions, LLC. Robinett contends that the district court erroneously concluded that the federal and Arkansas Medicaid laws do not bar a medical services provider from billing patients directly until and unless the provider bills Medicaid. We affirm.

## I. *Background*

Lacey Robinett was severely injured in an automobile accident in Arkansas. Another vehicle's driver was at fault. An air ambulance transported Robinett to the Med, the nearest trauma center, in Memphis, Tennessee, for immediate treatment. As a general condition of admission, the Med requires its patients to assign to the facility all of their health, hospitalization, and other insurance benefits.[2] At the time of her admission, Robinett was a Medicaid recipient. The Med had an agreement with Arkansas Medicaid to provide services to Medicaid beneficiaries from Arkansas. However, subsequent to treating Robinett, the Med chose not to bill Arkansas Medicaid for its services. Instead, pursuant to Tenn. Code Ann. § 29-22-101, the Med pursued a lien against Robinett's third-party claim against the tortfeasor "for all reasonable and necessary charges for hospital care, treatment and maintenance."

Following the accident, Robinett filed suit against the other driver who caused the wreck. She settled her damages claim with the at-fault driver's insurance company and received $100,000 in compensation. The Med billed Robinett for $23,750.54, the amount the Med claimed she owed for its medical services. Because Robinett was Medicaid eligible under Arkansas law, the Med could have billed Arkansas Medicaid but chose to bill Robinett directly instead. The Med contracted with Avectus as a collection agent to recover the charges from Robinett. In response to the collection effort, Robinett filed a class action suit against the Med and Avectus, alleging that both federal and Arkansas Medicaid laws prohibited the Med from directly billing Medicaid beneficiaries. The Med moved for judgment on the pleadings. The district

---

[2]A Med employee noted on Robinett's admission form that the document was left unsigned because of Robinett's medical condition at the time of admission.

court ruled for the Med and Avectus, concluding that they had "gambled on Robinett's potential recovery from a third party, and won." *Robinett v. Shelby Cty. Healthcare Corp.*, No. 3:16-cv-00188-DPM, 2017 WL 417197, at *1 (E.D. Ark. Jan. 31, 2017). Robinett appeals.

## II. *Discussion*

Robinett contends the district court misapplied both federal and Arkansas Medicaid law when it granted judgment on the pleadings in favor of the Med and Avectus. "We review the grant of judgment on the pleadings de novo, viewing the facts in [Robinett's] complaint as true and granting all reasonable inferences in her favor." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912 (8th Cir. 2014) (citing *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008)).

### A. *Patient Billing Under Federal Medicaid Laws*

Robinett contends that federal law bars direct patient billing. She grounds her argument on 42 U.S.C. § 1396a(a)(25)(C), which requires:

> that in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan . . . , or (II) the amount by which the amount payable for that service under the plan . . . exceeds the total of the amount of the liabilities of third parties for that service . . . .

Robinett interprets the provision to prohibit a Medicaid services provider from all direct patient billing. The district court disagreed, citing to 42 U.S.C. § 1396a(a)(25)(B), (H), and (I)(ii). Based on its interpretation of those provisions, the

district court concluded that § 1396a(a)(25)(C)'s prohibition of direct patient billing only comes into effect once a provider has opted to bill and to accept payment from Medicaid. Although we have not had the occasion to interpret the provision, several of our sister circuits have concluded that § 1396a(a)(25)(C) has a much narrower scope than Robinett suggests. We agree. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("We review questions of statutory interpretation de novo, which requires us to examine the text of the statute as a whole by considering its context, object, and policy." (citation omitted)).

Medicaid is a "payer of last resort." *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 291 (2006) (quoting S. Rep. No. 99-146, at 313 (1985)). "This means that all other available resources must be used before Medicaid pays for the medical care of an individual enrolled in a Medicaid program." *Caremark, Inc. v. Goetz*, 480 F.3d 779, 783 (6th Cir. 2007). States are required

> to implement "third party liability (TPL) programs" which "ensure that Federal and State funds are not misspent for covered services to eligible Medicaid recipients when third parties exist that are legally liable to pay for those services." Medicaid Programs; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1423–24 (1990). The Medicaid statute requires that each state agency administering the Medicaid program take measures to find out when third parties (like private insurers) are legally obligated to pay for services covered by the plan. *See* 42 U.S.C. § 1396a(25)(A). Each state plan must include a method of pursuing claims against such third parties. *See id.* If third party liability is discovered after medical care has been provided, the state agency must seek reimbursement from the third party. *See* 42 U.S.C. § 1396a(25)(B).

*Wesley Health Care Ctr., Inc. v. DeBuono*, 244 F.3d 280, 281 (2d Cir. 2001). But, in line with Medicaid's nature as a voluntary participation program, *see* 42 U.S.C. § 1396a(a)(23), federal law does not require that a medical services provider bill

Medicaid every time it treats a Medicaid beneficiary. *See* Medicaid Program; State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. at 1428 ("The provider is not restricted from receiving amounts from third party resources available to the recipient (or his or her legal representative).").

Federal Medicaid law precludes direct patient billing in two specific instances. Section 1396a(a)(25)(C) prohibits medical providers from substitute billing and balance billing. *See Miller v. Wladyslaw Estate*, 547 F.3d 273, 282–83 (5th Cir. 2008) (citations omitted). A medical provider engages in substitute billing when it *already* has accepted payment from Medicaid but tries to refund the payment in order to bill the patient directly, usually because Medicaid reimbursements are often much lower than the provider's "customary fee[s]." *Id.* at 283 (citing *Evanston Hosp. v. Hauck*, 1 F.3d 540, 542 (7th Cir. 1993)). "Balance billing occurs when a provider *accepts payment from Medicaid and then seeks to recover from the patient* the balance between that payment and its customary fee." *Id.* (emphasis added) (citing *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr. Dated June 27, 2002*, 410 F.3d 304, 314 (6th Cir. 2005)). Thus, § 1396a(a)(25)(C) only becomes relevant *once the provider has billed Medicaid and accepted payment* for services provided to a beneficiary. The provision does not bar a provider from taking a chance that a Medicaid-eligible patient has a non-Medicaid source of payment for the medical services rendered. The provider thus may opt to attempt collection directly from the patient or a liable third party instead of seeking a certain but likely reduced payment from Medicaid.

Not only does the plain language of the statute dictate this interpretation, this reading comports with Medicaid's role as the payer of last resort. The federal Medicaid statutory scheme is designed to ensure that where there are liable third parties, Medicaid's expenses are reimbursed. Other federal regulations reinforce § 1396a(a)(25)(C)'s mandate. Section 433.139(b)(1) of 42 C.F.R. requires that if a

Medicaid "agency has established the probable existence of third party liability at the time the claim is filed, the agency must reject the claim and return it to the provider." "This method of payment is called 'cost avoiding;' it entails shifting to the provider the burden of securing payment from third parties." *Miller*, 547 F.3d at 278 (citing *Wesley Health Care Ctr.*, 244 F.3d at 282). Alternatively, Medicaid may "pay and chase," where "the state Medicaid agency 'pays the total amount allowed under the agency's payment schedule and then seeks reimbursement from the liable third party.'" *Id.* (quoting *Wesley Health Care Ctr.*, 244 F.3d at 282); *see also* 42 U.S.C. § 1396a(a)(25)(B); 42 C.F.R. § 433.139(c). Thus, federal Medicaid regulations run counter to Robinett's suggestion, because the "cost avoidance" measure requires medical providers to bill liable third parties, or they may bill the patient directly.

Finally, legislative history supports our conclusion. "[T]he legislative history of the third-party liability evinced a congressional intent that 'the Medicaid program . . . be reimbursed from available third party sources to the fullest extent possible . . . .'" *Ahlborn*, 547 U.S. at 290 (first alteration in original) (citation omitted). Congress intended to protect Medicaid's coffers to the fullest extent possible. Unless and until a medical services provider chooses to charge and to accept payment from Medicaid, the provider is free to attempt to recover from the patient or a liable third party.

In *Miller*, the Fifth Circuit confronted an issue remarkably similar to the present case. There, an automobile accident caused severe burns to the plaintiff, who then received emergency treatment at a Louisiana hospital. 547 F.3d at 276. At the time of treatment, the plaintiff was not a Medicaid beneficiary, and the hospital filed a medical lien, pursuant to Louisiana law, against any potential tort settlement. *Id.* Subsequently, the plaintiff sued the at-fault third party for injuries from the accident and recovered. *Id.* By then, the plaintiff had become Medicaid-eligibile, and the hospital had obtained Medicaid approval for his treatment and hospital stay. *Id.* However, it then decided not to bill Medicaid and to seek remuneration through the

lien against the plaintiff. *Id.* The Fifth Circuit held that the hospital could undertake such actions because

> it is clear that the limitations on a health care provider's ability to obtain reimbursement for the services it provides a Medicaid-eligible patient are not triggered until a provider bills and accepts payment from Medicaid for those services. If a provider chooses not to bill and accept payment from Medicaid, then it remains free to seek its entire customary fee from the patient. Of course, the provider runs the risk of not recovering anything from the patient because the patient may never have the ability to pay his medical expenses, or the third party payment may not come to fruition. The federal Medicaid scheme, however, gives providers the opportunity to make a "calculated choice" whether to seek reimbursement from Medicaid or from the patient.

*Id.* at 284–85.

Like the hospital in *Miller*, the Med chose to make the calculated choice of billing Robinett directly. This was permissible. We hold that federal law did not bar the Med from attempting recovery from Robinett or a liable third party because the Med had opted not to bill and to accept payment from Arkansas Medicaid.

B. *Patient Billing Under Arkansas Medicaid Laws*

Robinett next argues that even if federal law permits the Med to bill her directly, Arkansas law does not. She asserts that the district court erroneously concluded otherwise. We review de novo the district court's interpretation of Arkansas law. *See Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1267 (8th Cir. 1997) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991)).

Robinett says that Arkansas law goes beyond the federal bar against balance and substitute billing. Arkansas

prohibit[s] any provider of medical services who participates in the Arkansas Medicaid program to bill or receive payment from any Medicaid-eligible person, his or her spouse, relative, guardian, or any other prospective payee for services or considerations for which payment is either payable in full or has been paid in full by the program.

Ark. Code Ann. § 20-77-104(a). Further, Arkansas law

prohibit[s] any payment by any Medicaid-eligible person or his or her payee in excess of the rate or fee for service that the medical services provider has agreed to accept as payment in full as evidenced by written agreement or contract to participate in the program.

*Id.* § 20-77-104(c). The Arkansas Supreme Court has not interpreted this statute. Robinett urges us to interpret the phrase "payable in full" to include medical services rendered but which have not yet been billed. We read the phrase differently.

"[I]n legal contexts, 'payable' [means] . . . a sum of money 'that is to be paid. An amount may be payable without being due.'" *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 636 (8th Cir. 2016) (quoting *Payable*, Black's Law Dictionary (9th ed. 2009)). In Robinett's case, nothing was "payable" by Medicaid, because prior to the Med billing Medicaid, the amount "to be paid" is zero. But, if and when the Med bills Medicaid, then the Med must accept what Medicaid pays as "payable in full." This interpretation comports with the Medicaid payment scheme. Medicaid, by design, does not pay the full price for medical services, nor does it pay for every service provided. *See Spectrum Health Continuing Care Grp.*, 410 F.3d at 313–14. Until the medical provider bills for services rendered, Medicaid owes the provider nothing. As such, nothing is capable of being paid until the provider bills for it. Thus, Ark. Code Ann. § 20-77-104(a)

simply reinforces the federal ban on substitute billing. Likewise, Ark. Code Ann. § 20-77-104(c) codifies into Arkansas law the federal ban on balance billing.

In addition, § 20-77-104's title, "Double Billing—Legislative Intent," shows that the Arkansas Legislature meant to ban *double* billing by a medical provider, either through substitute or balance billing. Nothing in the statute prohibits direct patient billing when the provider opts to forego Medicaid's guarantees and bill the patient or a liable third party. Finally, the Arkansas Department of Human Services, which administers Arkansas Medicaid, interprets neither federal nor Arkansas law to prohibit a medical provider's decision to forego Medicaid and pursue other avenues of recovery. In its Arkansas Medicaid Beneficiary Handbook, the department cautions patients that "[d]octors do not have to bill Medicaid . . . , even if they are Medicaid . . . providers." Defendant Shelby County Healthcare Corporation's Rule 12(c) Motion for Judgment on the Pleadings, Exhibit A, at 8, *Robinett v. Shelby Cty. Healthcare Corp.*, No. 3:16-cv-00188-DPM (E.D. Ark. Sept. 29, 2016), ECF No. 23-2. Thus, Robinett's suggested reading of Arkansas Medicaid law is not supported by the statute's title, its plain language, or by the agency that administers Arkansas Medicaid. We hold that, like the federal provisions, the Arkansas Medicaid statutes do not prohibit a medical provider from foregoing Medicaid's guaranteed payment for covered services and opting instead to bill the patient or liable third parties directly.

### III. *Conclusion*

We affirm.

_____