*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VICTORIA TAYLOR,

        Plaintiff-Appellant,

and

ASCENSION PROVIDENCE HOSPITAL,

        Intervening Plaintiff,

v

FARMERS INSURANCE COMPANY,

        Defendant-Appellee,

and

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant/Third-Party Plaintiff,

and

USAA CASUALTY INSURANCE COMPANY,

        Third-Party Defendant.

UNPUBLISHED
April 14, 2025
1:39 PM

No. 368754
Wayne Circuit Court
LC No. 21-001929-NF

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

In this first-party no-fault action, plaintiff, Victoria Taylor, appeals as of right the trial court's order granting partial summary disposition in favor of defendant, Farmers Insurance Company. We affirm, but for reasons different than those given by the trial court.

## I. BACKGROUND

Taylor was involved in a motor vehicle collision and sustained injuries. Those injuries were treated by Detroit Medical Center Sinai-Grace Hospital (DMC). The relevant treatment occurred between December 5, 2019 and December 8, 2019,[1] and the cost of the treatment totaled $113,072.25.

DMC billed Medicaid for Taylor's treatment, and on January 17, 2020, Medicaid made a conditional payment of $6,202.78 to DMC for Taylor's medical bills. DMC accepted the conditional payment, following which DMC's billing statements showed that plaintiff owed $0 to DMC.

At some point after Taylor was injured, she submitted a claim to Michigan Automobile Insurance Placement Facility, which assigned Farmers to Taylor's claim on January 25, 2021. Taylor subsequently brought this case against Farmers, seeking unpaid no-fault benefits.[2] Farmers and Taylor were able to resolve all of their differences except for whether Farmers was obligated to pay no-fault benefits to Taylor for the billed cost of her treatment at DMC from December 5, 2019 to December 8, 2019.

On that issue, Farmers moved for partial summary disposition under MCR 2.116(C)(8) and (10), arguing that it was only responsible for paying charges that were "incurred" by Taylor, and that Taylor did not "incur" any "expenses beyond those paid by Medicaid" because that is the amount that satisfied Taylor's bill and relieved her of any legal responsibility for the relevant medical bills. Farmers added that DMC was in fact prohibited from seeking further recovery from Taylor for the relevant medical expenses because, to accept Medicaid's payment, DMC had to agree that the payment fully satisfied Taylor's bill.

In response, Taylor argued that she incurred the full amount of the charges reflected in her medical bills when she received treatment from DMC, and that the Medicaid payment did not change this fact because a medical provider in Michigan is entitled to "the total amount of reasonable and customary charges, despite accepting payments by Medicaid." Along with her response, Taylor submitted an affidavit from Andrea Prevost, a billing representative for DMC, who averred that the Medicaid payment that DMC accepted did not represent the reasonable and customary charge for the treatment that DMC provided to Taylor. As for Farmers' argument that DMC was barred from seeking additional payments from Taylor after accepting a payment from Medicaid, Taylor argued that the caselaw on which Farmers relied was inapposite because Taylor technically did not qualify for Medicaid, as she was covered by a no-fault insurer.

At the start of the hearing on Farmers' motion, the trial court clarified that the parties were not disputing that Farmers was liable but rather were disputing the extent of Farmers' liability—

---

[1] Taylor received additional services from DMC after December 8, 2019, but the only services relevant to this appeal are those rendered between December 5, 2019 and December 8, 2019.

[2] As the case caption suggests, this case involved more litigants, but the issues concerning the other litigants have been resolved, and only Farmers and plaintiff are parties to this appeal.

Farmers was contending that it was liable for the amount that Medicaid paid to satisfy Taylor's obligation to DMC, while Taylor was arguing that Farmers was liable for the full amount of DMC's original bill to Taylor. After listening to the parties' ensuing arguments, the trial court issued its ruling from the bench. The court first observed that federal caselaw prohibited a medical provider from accepting a Medicaid payment then attempting to recover more from a third party. "When providers enter into an agreement with . . . Medicaid," the court explained, "they agree to accept certain amounts and not bill over those amounts." Providers were not required to accept payment from Medicaid, the court reasoned, but if they chose to do so, and the decision was not a mistake,[3] then they were required to accept Medicaid's payment as satisfaction of the patient's bill. The court added that if a provider was not happy with this arrangement, the provider could choose not to accept payment from Medicaid. Following the hearing, the court entered an order granting Farmers' motion for partial summary disposition.

This appeal followed.

## II. STANDARDS OF REVIEW

Farmers moved for partial summary disposition under MCR 2.116(C)(8) and (10). The trial court, however, clearly granted the motion under MCR 2.116(C)(10) because it considered evidence outside the pleadings. See *Mino v Clio Sch Dist*, 255 Mich App 60, 63 n 2; 661 NW2d 586 (2003).

A trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10) is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The rule provides that a trial court may grant a motion for summary disposition if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks, citation, and alteration omitted). When reviewing a motion filed under MCR 2.116(C)(10), courts must consider the evidence in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160.

## III. ANALYSIS

Taylor argues that the trial court erred by granting Farmers' motion for partial summary disposition. We disagree.

---

[3] Taylor asserted in the trial court, and maintains on appeal, that DMC billed and accepted payment from Medicaid by mistake. We agree with the trial court, however, that Prevost's affidavit dispels any notion that DMC accepted Medicaid's payment by mistake. Prevost's affidavit states that "DMC billed Medicaid" for Taylor's treatment, Medicaid paid for the treatment, and DMC intends to reimburse Medicaid "[w]hen and if payment is received" from Farmers.

Under MCL 500.3107(1)(a), a person injured in a motor vehicle collision is entitled to recover personal protection insurance (PIP) benefits for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Our Supreme Court has explained that

> the plain language of this provision imposes four requirements that a PIP claimant must prove before recovering benefits for allowable expenses: (1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable. [*Douglas v Allstate Ins Co*, 492 Mich 241, 247; 821 NW2d 472 (2012).]

The parties dispute the third requirement—whether Taylor "incurred" expenses beyond what Medicaid paid to satisfy Taylor's bill. "To 'incur' means [t]o become liable or subject to, [especially] because of one's own actions." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003) (quotation marks and footnote omitted, alteration in *Proudfoot*).

The parties rely on competing cases to argue for different results. Taylor relies on this Court's opinion in *Shanafelt v Allstate Ins Co*, 217 Mich App 625; 552 NW2d 671 (1996), to argue that she incurred the entire amount of DMC's bill when she accepted DMC's medical treatment. Farmers relies on this Court's later opinion in *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536; 637 NW2d 251 (2001), to argue that Taylor only incurred the amount that Medicaid paid to satisfy her bill with DMC.

In *Shanafelt*, the plaintiff was injured while getting into a vehicle. *Shanafelt*, 217 Mich App at 628. The plaintiff's no-fault insurer denied her claim, so the plaintiff's health insurer paid it. *Id*. at 629. On appeal, the no-fault insurer argued that the plaintiff never "incurred" any expenses because her bills were "paid directly by her health insurer." *Id*. at 636. To address this argument, the *Shanafelt* Court turned to a dictionary to define the word "incur" because it was not defined in the no-fault act. *Id*. at 638. The dictionary defined "incur" as "to become liable for." *Id*., quoting *Random House Webster's College Dictionary* (1995). The *Shanafelt* Court reasoned that the "plaintiff became liable for her medical expenses when she accepted medical treatment," and the fact that her health insurer paid for her medical expenses "does not alter the fact that she was obligated to pay those expenses." *Shanafelt*, 217 Mich App at 638.

In *Bombalski*, the plaintiff was injured in a motor vehicle collision, and despite being eligible for no-fault benefits, the plaintiff's health insurer covered his medical care. *Bombalski*, 247 Mich App at 538-539. The plaintiff's health insurer did not pay the entire amount of the plaintiff's medical bill, however, and the plaintiff's no-fault insurer argued in a motion for summary disposition that it was only liable for the amount that the plaintiff's health insurer paid to satisfy the plaintiff's medical bills. *Id*. at 539. The trial court agreed and accordingly limited plaintiff's recovery to the amount that his health insurer paid to the plaintiff's medical providers to satisfy the plaintiff's bill. *Id*. at 540. On appeal, the plaintiff argued that the trial court erred by limiting his recovery to what his health insurer paid rather than "the full amounts charged" by his medical providers "when he accepted their services." *Id*. at 540-541. To address this argument, the *Bombalski* Court looked to *Shanafelt*'s definition of "incur" to mean "to become liable for," and explained that "liable" means "[r]esponsible or answerable in law; legally obligated." *Id*. at

-4-

542-543 (quotation marks and citations omitted). With this understanding of "incur," the *Bombalski* Court reasoned:

> The satisfaction of plaintiff's medical bills by [the plaintiff's health insurer] through payment of less than the amounts charged by the providers relieved plaintiff of any responsibility or legal obligation to pay the providers further amounts exceeding those proffered by [the plaintiff's health insurer] and accepted by plaintiff's health care providers. Because plaintiff bears no liability for the full medical service amounts initially charged by his health care providers, he has not incurred these full charges. [*Id*. at 543.]

After explaining why the public policy behind the no-fault act also supported this conclusion, *id*. at 543-545, the *Bombalski* Court concluded

> that in light of the ordinary meaning of incurred and the public policy behind the no-fault act, incurred charges within MCL 500.3107(1)(a) do not encompass any amounts (1) exceeding those that plaintiff's health insurer actually paid in satisfaction of plaintiff's medical bills and (2) for which plaintiff no longer bears legal responsibility. [*Bombalski*, 247 Mich App at 546.]

*Bombalski* thus built on the foundation laid in *Shanafelt*. The issue in *Shanafelt* was whether a claimant "incurred" expenses if another insurer paid the claimant's bill. This Court explained that to "incur" means "to become liable for," and the plaintiff in *Shanafelt* was clearly liable for the medical bills that her health insurer paid—the reason why the plaintiff's health insurer paid the plaintiff's bill was because the plaintiff was liable for it. *Shanafelt*, 217 Mich App at 638. The issue in *Bombalski* was not whether a claimant "incurred" expenses that another insurer paid but the extent to which a claimant "incurs" expenses if another insurer satisfies the claimant's bill for less than the billed amount. *Bombalski* built off of *Shanafelt*'s definition of "incur" and explained that "liable" means "[r]esponsible or answerable in law; legally obligated," so an expense is "incurred" only to the extent that a claimant is responsible for paying it. *Bombalski*, 247 Mich App at 542-543. See also *Farm Bureau Gen Ins v Blue Cross Blue Shield of Michigan*, 314 Mich App 12, 22; 884 NW2d 853 (2015) ("When an insured has no legal responsibility for disputed medical costs, those expenses are not 'incurred' by the insured within the meaning of MCL 500.3107(1)(a), and they are not subject to payment by the no-fault insurer."). If a medical provider accepted less than the amount reflected in the claimant's bill as satisfaction of the bill, then that lesser amount was all that the claimant was truly responsible for paying, so the lesser amount is the expense that the claimant "incurred." *Bombalski*, 247 Mich App at 546.

Returning to the instant case, we agree with Farmers that *Bombalski* controls. Farmers submitted DMC's billing statements, which show that Taylor was charged $113,072.25 for services that DMC performed between December 5, 2019 to December 8, 2019. Those same billing statements reflect that DMC received a payment from Medicaid for $6,202.78 on January 17, 2020, after which DMC subtracted the remaining $106,869.47 balance from Taylor's bill, so she owed $0. This evidence established that Taylor's bill was satisfied for $6,202.78, and Taylor did not bear any responsibility for an amount in excess of that. Taylor's argument that she incurred the entire $113,072.25 charged by DMC, not just what Medicaid paid to satisfy her bill, runs directly counter to *Bombalski*'s holding that "incurred charges" within the meaning of MCL

500.3107(1)(a) do not include amounts exceeding what was "actually paid in satisfaction of [the claimant's] medical bills" for which the claimant no longer bears responsibility. *Bombalski*, 247 Mich App at 546.

Taylor insists that she remains liable for the entire amount charged by DMC because the Medicaid payment was not intended to satisfy Taylor's bill, but nothing in the record supports that assertion. That is, nothing in the record suggests that DMC is seeking to collect anything more from Taylor to satisfy her bill. The affidavit of DMC's billing specialist, Prevost, states that DMC charged Taylor $113,072.25 for services that DMC performed between December 5, 2019 to December 8, 2019; that DMC billed Medicaid and accepted Medicaid's payment for Taylor's treatment; and that "[w]hen and if payment is received from [Farmers], DMC will reimburse [Medicaid[4]] in the amount of $6,202.78." Prevost's affidavit does not state that Taylor remains liable to DMC for any amount or that DMC plans to pursue Taylor for some unpaid amount of her bill. This is presumably because, as Farmers' evidence shows, Medicaid's payment satisfied DMC's bill, and Taylor no longer owes DMC anything.

In sum, the evidence submitted by the parties leads to one conclusion: that DMC accepted Medicaid's payment as satisfaction of Taylor's medical bill. Farmers submitted evidence showing that, after DMC accepted Medicaid's payment, DMC reduced the amount that Taylor was required to pay on her bill to $0. In response to this evidence, Taylor failed to submit evidence creating a question of fact whether Medicaid's payment to DMC satisfied Taylor's liability to DMC. Without evidence that Taylor remains liable to DMC for any amount in excess of what Medicaid paid, Farmers is correct that the only charges "incurred" by Taylor for services that DMC provided between December 5, 2019 to December 8, 2019 is the amount paid by Medicaid. Farmers is therefore only responsible for paying that amount under MCL 500.3107(1)(a). See *Duckworth v Continental Nat'l Indemnity Co*, 268 Mich App 129, 136-137; 706 NW2d 215 (2005) (holding that a plaintiff did not "incur" any charges within the meaning of MCL 500.3107(1)(a) for treatment that the plaintiff received in Canada because the plaintiff received the treatment "free of charge" under Canada's nationalized healthcare program).

To be clear, we are not reaching the issue that the trial court reached: whether it would hypothetically be legal for DMC to pursue additional recovery from Taylor after accepting Medicaid's payment. The trial court reasoned that DMC could not do so based on federal caselaw prohibiting "balance billing," which occurs when a medical provider accepts payment from Medicaid, then seeks to recover from the patient the balance between the Medicaid payment and the provider's customary fee. See *Spectrum Health Continuing Care Group v Anna Marie Bowling Irrecoverable Tr*, 410 F3d 304, 314 (CA 6, 2005). That prohibition stems from 42 USC 1396a(a)(25)(C), which federal courts have held prohibits not only balance billing but "substitute billing." Substitute billing occurs when a medical provider "*already* has accepted payment from Medicaid but tries to refund the payment in order to bill the patient directly, usually because Medicaid reimbursements are often much lower than the provider's customary fees." *Robinett v Shelby Co Healthcare Corp*, 895 F3d 582, 587 (CA 8, 2018) (quotation marks, citation, and

---

[4] Prevost's affidavit mistakenly uses "Medicaid" and "Medicare" interchangeably.

alteration omitted). As the Eighth Circuit explained, these prohibitions "only become[] relevant *once the provider has billed Medicaid and accepted payment* for services provided to a beneficiary." *Id*.[5] As Taylor's briefing highlights, there is tension between federal caselaw and Michigan caselaw in this area. Namely, this Court has held that it is permissible for a medical provider to bill Medicaid for a patient's treatment, accept Medicaid's payment on the bill, then collect additional amounts on the same bill for the same treatment from the patient's no-fault insurer. See *Hicks v Citizens Ins Co of Am*, 204 Mich App 142, 146-147; 514 NW2d 511 (1994); *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 137-138; 489 NW2d 137 (1992) (rejecting the argument "that acceptance of Medicaid payments for injuries suffered in accidents involving automobiles discharges an assigned claims servicing insurer from liability to the claimant or the providers of medical services for charges exceeding the statutory amount paid by Medicaid"). But see *Sheeks v Farmers Ins Exch*, 146 Mich App 361, 365; 379 NW2d 493 (1985) (holding that a no-fault insurer did not have to pay more than what Medicaid paid to cover the plaintiff's claim because the "plaintiff's health care providers must accept as payment in full the Medicaid payments from the state").

Instead of wading into this potentially-thorny area, we hold only that, based on the record before us, there is no question of fact that DMC accepted Medicaid's payment as satisfying Taylor's bill, and nothing in the record suggests that DMC is pursuing or plans to pursue additional payment from Taylor.[6] As this Court explained in *Bombalski*, "incurred charges" within the

---

[5] With this understanding of the federal court's interpretation of 42 USC 1396a(a)(25)(C), it is worth briefly revisiting Prevost's affidavit. In that affidavit, Prevost is careful to avoid stating how much, if anything, Taylor (and by extension, Farmers) owed on Taylor's bill following Medicaid's payment. If Prevost averred that DMC planned to refund Medicaid's payment and expects to recover from Taylor (through Farmers) the entire amount that DMC initially charged Taylor, it could suggest that DMC was engaged in substitute billing. Prevost instead averred that "[w]hen and if payment" of an unspecified amount "is received from" Farmers for an unspecified reason, DMC would reimburse Medicaid.

[6] In the cases relied upon by plaintiff on appeal, the medical providers were parties, and there was no dispute that they were pursuing payment of their bills beyond what Medicaid paid. Compare *Hicks*, 204 Mich App at 144 (explaining that it was consolidated with the hospital's case against the no-fault insurer); *Oostdyk v Auto Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 30, 2014 (Docket No. 317221), p 4 (noting that the hospitals intervened to collect payment in excess of what Medicaid paid); and *Botsford Gen Hosp*, 195 Mich App at 130 (identifying the hospital as a plaintiff) with *Bombalski*, 247 Mich App 536 (the healthcare provider who accepted an amount less than the amount billed to the patient as satisfaction of the patient's bill was not involved in the litigation). Given the potentially-serious implications of deciding whether a medical provider is legally permitted to pursue additional amounts from a no-fault insurer after accepting payment from Medicaid, we believe it prudent to wait for a case in which a medical provider is clearly engaging in this practice before opining on the issue, particularly because the medical provider may have a lot to say on the matter. Accord *Centria Home Rehab, LLC v Philadelphia Indem Ins Co*, 345 Mich App 649, 668; 9 NW3d 104 (2023) ("By recognizing a healthcare provider's ability to bring a claim against an insurer for the

meaning of MCL 500.3107(1)(a) do not include amounts exceeding what was "actually paid in satisfaction of [the claimant's] medical bills" for which the claimant "no longer bears legal responsibility." *Bombalski*, 247 Mich App at 546. So, Taylor only "incurred" charges in the amount paid by Medicaid because that amount satisfied Taylor's bill and absolved Taylor of all legal responsibility for further payment, as evidenced by DMC's billing statements. The amount that Medicaid paid is therefore the amount that Farmers is responsible for paying under MCL 500.3107(1)(a).

We briefly address two other points raised by Taylor. First, Taylor observes that she does not qualify for Medicaid because she has no-fault insurance. See *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 501-502; 274 NW2d 373 (1979). Whether Taylor qualifies for Medicaid is irrelevant, however, because DMC accepted Medicaid's payment as full satisfaction of Taylor's bill, and nothing suggests that DMC is pursuing further collection from Taylor. Second, Taylor insists that there is a question of fact whether Medicaid's payment to DMC constitutes the reasonable and customary rate for DMC's services. But this, too, is irrelevant because Taylor is not entitled to allowable expenses beyond the charges she incurred. See MCL 500.3107(1)(a).

IV. CONCLUSION

We hold that the trial court did not err by granting Farmers' motion for partial summary disposition. As Farmers conceded in its motion for partial summary disposition and the trial court recognized at the start of the parties' hearing, Farmers is clearly liable for the amount that Medicaid paid to satisfy Taylor's bill. And for the reasons explained in this opinion, based on the record evidence, there is no question of fact that Taylor did not "incur" allowable expenses beyond what Medicaid paid, and Farmers is only responsible for paying that amount at this time. We expressly decline to reach the issue of whether it would hypothetically be legal for DMC to collect additional payment from Taylor beyond what Medicaid paid because there is no evidence that DMC has done that or is planning to do so in this case. We therefore affirm the trial court, but on different grounds.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

---

difference between what was billed and what was paid, claims concerning these amounts will be most efficiently litigated by the parties with the pecuniary interest at stake.").